IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DENNIS MOSER,                 :
                                 :         Case No. 4:06-CV-00097
           Plaintiff,      :
                                   :         (Judge McClure)
              v.               :
                                   :
LIBERTY LIFE ASSURANCE     :
COMPANY OF BOSTON,        :
                                   :
           Defendant.    :

**M E M O R A N D U M**

January 9, 2007

## BACKGROUND:

On January 12, 2006, plaintiff Dennis Moser filed a complaint against defendant Liberty Life Assurance Company of Boston.  Plaintiff's cause of action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"). This court has jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e). Plaintiff seeks to recover long-term disability benefits.

The record before the Plan Administrator when it denied plaintiff's benefits has been filed with the court.  Both parties have filed motions for summary judgment.  Opposing briefs have been filed and the motions are now ripe for our review.  Now, for the following reasons, we will grant defendant's motion for

1

summary judgment, deny plaintiff's motion for summary judgment, and enter

judgment in favor of defendant Liberty and against plaintiff Moser.


## DISCUSSION:

## I.  LEGAL STANDARD

It is appropriate for a court to grant a motion for summary judgment "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled a judgment as a matter of law."  Fed. R.

Civ. P. 56©.

"If the nonmoving party has the burden of persuasion at trial, 'the party

moving for summary judgment may meet its burden by showing that the

evidentiary materials of record, if reduced to admissible evidence, would be

insufficient to carry the nonmovant's burden of proof at trial.'" Jalil v. Avdel Corp.,

873 F.2d 701, 706 (3d Cir. 1989) (quoting Chippolini v. Spencer Gifts, Inc., 814

F.2d 893, 896 (3d. Cir. 1987)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323

(1986).

In evaluating a motion for summary judgment the court will draw all

reasonable inferences from the evidence in the record in favor of the nonmoving

party.  Am. Flint Glass Workers Union v. Beaumont Glass Co., 62 F.3d 574, (3d

Cir. 1995).  The nonmoving party, however, cannot defeat a motion for summary

judgment by merely offering general denials, vague allegations, or conclusory

statements; rather the party must point to specific evidence in the record that

creates a genuine issue as to a material fact.  See Celotex, 477 U.S. at 32;

Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).

## II.  STATEMENT OF FACTS

In this case we have cross motions for summary judgment.  Fortunately for

the court, the facts from each motion can be synthesized into a single statements of

facts.  It is important to note that the record in this case is lengthy and involves

numerous medical reports.  We obviously have not included every such report in

this statement of facts, but only those that were mentioned by each party in its

statement of material facts and those others that we believe are relevant to our

decision.

Plaintiff Dennis Moser ("Moser") is an adult individual who was an over-

the-road truck driver with Wise Foods.  Liberty Life Assurance Company of

Boston ("Liberty") is a corporation that provides disability insurance to the

employees of Wise Foods pursuant to a group disability policy ("Plan").

The Plan provides Liberty with the authority "in its sole discretion, to

construe the terms of [the] policy and to determine benefit eligibility." (Admin.
Rec. & Plan, Rec. Doc. No. 11, at LL-0050.)  The Plan indicates that to be eligible
for long-term disability benefits, the employee's condition must prevent him or her
from performing the material and substantial duties of his or her "own occupation"
during the elimination period and the next twenty-four months of disability.  (Id. at
LL-0009.)  To continue to receive benefits after the elimination period and the next
twenty-four months, the employee's condition must prevent him or her from
performing, with reasonable continuity, the material and substantial duties of "any
occupation." (Id.)

On August 14, 2001, Moser was involved in a motor vehicle accident in
which he blacked out while driving his truck for Wise Foods.  Moser's family
physician, Dr. Michael Weisner, diagnosed Moser with severe abnormal vasovagal
syncope.  Moser was unable to return to work because of the risk that he would
have another black-out while driving.  (Id. at LL-0588.)  Therefore, he went on
short-term disability.

In February of 2002, Moser saw Dr. Randle Storm, a cardiologist.  At this
point, his symptoms were lightheadedness and dizziness, in addition to the
blackouts caused by the syncope.  On March 7, 2002, Moser had a pacemaker
implanted by Dr. Storm.  The purpose of this pacemaker was to help with the

4

blackouts.  Evidently, the pacemaker had a positive effect.  On October 9, 2002, Dr. Storm stated that Moser could return to driving because there had been no blackouts since the insertion of the pacemaker.  (Id. at LL-0423.)  Dr. Weisner, however, on September 17, 2002 continued to hold the opinion that Moser could not drive.  (Id. At LL-0424.)

In June of 2002, after the end of Moser's short-term disability benefits, Liberty received notice of a claim by Moser for long-term disability benefits under the Plan.  (Id. at LL-0067-70.)  On July 23, 2002, after an investigation of eligibility, Liberty approved Moser's claim for long-term disability benefits.  (Id. at LL-0560.)  Pursuant to the Plan, Moser was notified that he would continue to receive benefits as long as he met the Plan definition of disability.  (Def.'s Statement of Material Facts, Rec. Doc. No. 14, ¶ 7.)  Furthermore, he was informed that after the elimination period and the next twenty-four months of disability, the definition of disability changed from the inability to perform one's "own occupation" to the inability to perform "any occupation."  (Id.)

On March 23, 2003, the Social Security Administration rendered a decision finding Moser disabled under the Social Security Act.  (Id. at LL-0386-89.)  As part of that decision, the ALJ concluded that Moser's impairments prevent him from performing all but sedentary work.  (Id. at LL-0388.)  The ALJ also

concluded that Moser was approaching an advanced age, has a high school education, and has a semi-skilled work background (driving and cooking), but cannot transfer these skills to sedentary occupations. (Id.) Based on these conclusions, the ALJ applied the grid rules of the medical-vocational guidelines to find that Moser was disabled. (Id. at LL-0389.)

On July 29, 2003, in anticipation of the change in the definition of disability after twenty-four months of benefits have been paid from "own occupation" to "any occupation," Liberty sent Moser a letter reminding him of the change and advising him that it intended to begin gathering information to determine whether he met the new definition of disability. (Admin. Rec. & Plan, Rec. Doc. No. 11, at LL-0461.)

On July 17, 2003, in response to Liberty's request for updated medical information, Dr. Weisner returned a physical capacity form. (Id. at LL-0466-67.) This form stated that Moser was able to sit for eight hours per day, stand for four hours per day, and walk for three hours per day. (Id.) Furthermore, when asked in the request whether Moser could work for eight hours per day, Dr. Weisner responded that he was "unsure - I don't know why 8 hrs of sedentary activity would be a problem but it might depend on the level of activity and symptoms." (Id.)

Furthermore, Dr. Weisner stated in a telephone call to Dr. John Holbrook, one of Liberty's consulting physicians, that aside from restrictions on driving, climbing ladders, and operating heavy machinery, Moser had a substantially intact physical functioning capacity.  (Id. at LL-0416.)  Dr. Weisner confirmed this statement in writing on January 12, 2004.  (Id. at LL-0404-06.)

On September 4, 2003, as part of Liberty's review of Moser's claim, Liberty's vocational rehabilitation department completed a transferable skills analysis.  (Id. at LL-0451-52.)  In this report, Patricia Thal, a vocational case manager, identified several occupations that Moser could perform consistent with his prior training and experience, education, and physical capacity.  (Id.)  The occupations identified were information clerk, gate guard, non-emergency dispatcher, and small product assembler.  (Id.)

On February 10, 2004, Liberty issued its decision disapproving of Moser's receipt of long-term disability benefits because it determined that Moser did not meet the new definition of "disabled" under the Plan.  (Id. at LL-0409-10.)

On August 18, 2004, Liberty received a letter from Moser appealing Liberty's decision.  Moser's appeal contained the decision by the Social Security Administration finding that Moser was disabled under the Social Security Act, a list of medications that Moser was taking, and copies of certain sleep studies which

7

had been completed during March and July of 2004.  (Id. at LL-0377-401.)

Liberty forwarded this information along with Moser's medical records to Dr. Oyebode Taiwo, another of Liberty's consulting physicians.  After reviewing Moser's medical records and the additional records submitted with the appeal, Dr. Taiwo also expressed the opinion that Moser was capable of performing sedentary work.  (Id. at LL-0369).  On September 15, 2004, Liberty issued its decision to uphold the denial of long-term disability benefits and deny Moser's appeal.  (Id. at LL-0356-60.)

## III.  APPLICABLE STANDARD OF REVIEW

Under ERISA, a court reviewing an administrator's decision to deny benefits is by default reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine the employee's eligibility or construe the terms of the plan."  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Stratton v. E.I. DuPont De Nemours & Co., 363 F.3d 250, 253 (3d Cir. 2004).  Discretionary authority can be provided for by expressed or implied language in the benefit plan.  Luby v. Teamsters Health, Welfare, & Pension Trust, 944 F.2d 1176, 1180 (3d Cir. 1991).  If a plan provides discretionary authority to the administrator or fiduciary, then a reviewing court applies a form of arbitrary and capricious review.  Firestone Tire & Rubber Co., 489 U.S. at 111-12, 115; see

Mitchell v. Eastman Kodak Co., 113 F.3d 433, 437 (3d Cir. 1997).  In the present

case, the Plan does provide discretionary authority to Liberty.  The Plan provides

Liberty with the authority "in its sole discretion, to construe the terms of [the]

policy and to determine benefit eligibility."  (Admin. Rec. & Plan, Rec. Doc. No.

11, at LL-0050.)    Therefore, we will apply a form of arbitrary and capricious

review.

In conducting an arbitrary and capricious review of the Liberty's decision,

our inquiry is not whether Liberty made the same decision that we would have

made; a district court cannot substitute its own judgment for that of the plan

administrator when conducting an arbitrary and capricious review.  Abnathya v.

Hoffmann-La Roche, Inc., 2 F.3d 40, 45 (3d Cir. 1993) (quoting Lucash v. Strick

Corp., 602 F. Supp. 430, 434 (E.D. Pa. 1984)).  A district court conducting an

unadulterated arbitrary and capricious review may overturn a decision of a plan

administrator only if it is "without reason, unsupported by substantial evidence or

erroneous as a matter of law."  McLeod v. Hartford Life & Accident Ins. Co., 372

F.3d 618, 623 (3d Cir. 2004) (quotation marks and citations omitted).

The Third Circuit follows a sliding scale approach to applying an arbitrary

and capricious review in an ERISA claim.  Pinto v. Reliance Standard Life Ins.

Co., 214 F.3d 377, 392 (3d Cir. 2000).  The sliding scale allows for the court to

intensify its scrutiny of the insurer's decision to match such degree of conflict as may be present in the insurer's decision-making process.  <u>Id.</u>  In <u>Pinto</u>, the court provided four factors for courts to consider in determining the exact degree of scrutiny.  <u>Id.</u>  Those factors are: "(1) the sophistication of the parties; (2) the information accessible to the parties; (3) the exact financial arrangement between the insurer and the company; and (4) the status of the fiduciary, as the company's financial or structural deterioration might negatively impact the 'presumed desire to maintain employee satisfaction.'"  <u>Id.</u> at 392.  The Third Circuit stated in <u>Pinto</u> that they "expect district courts to consider the nature and degree of apparent conflicts with a view to shaping their arbitrary and capricious review of the benefits determinations of discretionary decisionmakers." 214 F.3d at 393.

As to the first factor, plaintiff obviously has less experience with disability claims when compared to Liberty.  Of course the relative sophistication of the parties is only one factor, and does not exclusively control the degree of scrutiny we will apply to Liberty's decision.  <u>See</u> <u>Rendulic v. Kaiser Aluminum & Chemical Corp.</u>, 166 F. Supp. 2d 326, 337 n.5 (W.D. Pa. 2001)(stating that disparity among parties alone was not a "critical factor").  Moreover, we agree with Liberty that this first factor under <u>Pinto</u> is tempered when a plaintiff, such as Moser, is represented by counsel during the administrative claims process.

10

<u>Schlegel v. Life Ins. Co. of N. America</u>, 269 F. Supp. 2d 612, 617 n.4 (E.D. Pa. 2003) (applying deferential arbitrary and capricious standard where plaintiff was relatively sophisticated and was represented by counsel).  Therefore, although a disparity in the sophistication of the parties exists, this disparity warrants only a slight heightening of our arbitrary and capricious review

The third factor also warrants another slight heightening of our arbitrary and capricious review.  Liberty has not hired a third-party claims administrator.  Thus, it both funds and administers the plan.  Therefore, it has a financial incentive not to grant meritorious claims, thus creating a conflict of interest.  <u>See</u>, <u>e.g.</u>, <u>Morris v. Paul Revere Ins. Co.</u>, 986 F. Supp. 872, 881 (D. N.J. 1997) (discussing how when an insurer both administers and funds the same plans a conflict of interest is created); <u>see also</u> <u>Pinto</u>, 214 F.3d at 389 n.7 (gathering cases where district courts applied "heightened scrutiny when the insurance company is the insurer and makes determinations").  This conflict of interest leads us to further heighten our scrutiny of Liberty's decision.

Plaintiff also points to the change in the definition of "disabled" that occurs after twenty-four months under the Plan in an attempt to make an argument under the third <u>Pinto</u> factor.  Specifically, plaintiff argues that this proves that Liberty's goal is to move people off of disability regardless of whether the claim is

11

meritorious.  There is nothing improper about this change in the definition of "disabled."  Had plaintiff's employer wanted to provide its employees with a longer or unlimited period of disability defined as "own occupation," it could have contracted with the defendant for such a plan (and presumably paid a higher premium for it).  Therefore, this argument does not warrant a further heightening of our scrutiny under the third factor of <u>Pinto</u>.

Finally, the second and fourth factors under <u>Pinto</u> do not warrant a heightening of our arbitrary and capricious review.  With respect to the second factor, Moser has not alleged that he was denied access to information which would warrant further heightening our review of Liberty's decision.  As to the fourth factor, there is no evidence that Liberty is experiencing financial or structural deterioration.

Nevertheless, based on the first and third <u>Pinto</u> factors, we will apply a slightly heightened level of arbitrary and capricious review.  Because of this slight heightening, we will give slightly less deference to Liberty, but our review will be nowhere similar to a <u>de novo</u> review.  Under a heightened review the administrator is "not afforded complete, freewheeling discretion," and the reviewing court must be "especially mindful to ensure that the administrator's interpretation of the policy language does not unfairly disadvantage the policy holder."  <u>McLeod</u>, 372 F.3d at

624.  Applying heightened scrutiny to Liberty's decision to terminate Moser's

long-term disability benefits requires us to be certain that a reasonable fact finder

could conclude there was substantial medical evidence in the administrative record

to support Liberty's determination that plaintiff was not entitled to long-term

disability benefits under the terms of the Plan.

Finally, we note that in the Third Circuit, "a district court exercising de novo

review over an ERISA determination between beneficiary claimants is not limited

to the evidence before the Fund's Administrator." Luby, 944 F.2d at 1184-85.  In

sharp contrast, the record available to a court conducting an arbitrary and

capricious review is the record made before the plan administrator, which cannot

be supplemented during litigation.  See Kosiba v. Merck & Co., 384 F.3d 58, 67

n.5 (3d Cir. 2004) (citing Mitchell, 113 F.3d at 440).  Therefore, the extent of our

slightly heightened arbitrary and capricious review is limited to the record made

before the Plan Administrator.

## IV. LIBERTY'S DECISION TO TERMINATE PLAINTIFF'S LONG-TERM DISABILITY BENEFITS

First, we would like to note our disappointment with plaintiff's brief in

support of his motion for summary judgment.  While plaintiff's statement of

material facts contains facts and citations, plaintiff's brief contains facts that are

13

not mentioned in the statement of material facts and do not contain citations.  It is inappropriate to include facts in the brief that are not included in the statement of material facts.  This is especially so when these facts in the brief do not contain citations.  The record in this case is nearly seven-hundred pages long.  While we don't doubt that these facts exist somewhere in the record, we are not pigs searching for truffles buried in a massive record.  United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991).  It is wholly inappropriate not to provide the court with citations.  See LR 56.1 of the Local Rules of the United States District Court for the Middle District of Pennsylvania.

Plaintiff offers two main arguments as to why the Plan Administrator acted arbitrarily and capriciously.  First, he argues that his work capacity is "less than sedentary" and this precludes him from performing "any occupation."  Second, he points to his favorable Social Security ruling to show he is disabled.

Prior to delving into the merits of plaintiff's argument, we think it is important to reiterate that our job is not to determine whether we think plaintiff's work capacity is "sedentary" or "less than sedentary" or whether we think plaintiff is or is not disabled.  Many cases involve conflicting medical reports.  Sometimes, one decision-maker may rationally conclude that a claimant is disabled while another using the same record could rationally conclude that the claimant is not

14

disabled.  Our job is to determine whether the Plan Administrator acted arbitrarily or capriciously in finding that plaintiff had the capacity to perform sedentary work and that he was not disabled.  Of course, as already stated, we are using a heightened form of arbitrary and capricious review in which we take a closer look at the Plan Administrator's decision.

With respect to plaintiff's argument that his work capacity is "less than sedentary," plaintiff provides us with several pieces of information to show that he continues to have blackouts despite the insertion of the pacemaker.  Plaintiff cites an October 10, 2005 letter from Dr. Storm that although insertion of the pacemaker can improve plaintiff's condition, it is common to continue having blackouts.  (Id.) Plaintiff also points to the fact that he had a blackout in February 2005 to support the contention that he continues to have blackouts.  (Id.)  Finally, plaintiff cites an October 31, 2005 letter from Dr. Ray T. Douglas which states that despite the insertion of the pacemaker, plaintiff continues to have episodes of light-headedness.  (Id.)

We find that it is inappropriate to consider these two opinions and the recent blackout.  The Dr. Storm and Dr. Douglas opinions were each given in October of 2005.  (Admin. Rec. & Plan, Rec. Doc. No. 11, at LL-0174-75.)  The recent blackout occurred in February of 2005.  Both the opinions and the blackout

occurred after the Plan Administrator determined that plaintiff was not disabled (February of 2004) and when that decision was upheld on appeal (September of 2004). It is inappropriate to consider evidence that was not before the Plan Administrator when the decision was made. See Kosiba v. Merck & Co., 384 F.3d 58, 67 n.5 (3d Cir. 2004) (citing Mitchell, 113 F.3d at 440). Even if this evidence was properly before the court, the two letters and the recent blackout only prove that blackouts may still occur. Frankly, this lay court would have no idea what to make of the fact that plaintiff may still experience blackouts. It is up to a medical expert to consider the severity and frequency of such blackouts and then determine the effect on plaintiff's work capacity.

Next, the plaintiff points to his favorable ruling by the Social Security Administration to show that he is disabled. We agree with the defendant that a favorable Social Security ruling has limited weight in an ERISA context. The Social Security Administration determined that plaintiff was disabled in March of 2003. The Plan Administrator for Liberty determined that plaintiff was not disabled in February of 2004 and the appeal upheld this decision in September of 2004. Therefore, the Plan Administrator had a different record before it than did the ALJ. We also think it is important to note that the grid rules of the Medical-Vocational guidelines do not allow for the consideration of unskilled sedentary

16

positions, despite the fact that the claimant may be able to perform sedentary work, when dealing with someone at plaintiff's age. 20 C.F.R. Pt. 404, Subpt. P, App. 2. § 201.00(g). A plan administrator, however, is not restricted from considering these unskilled sedentary positions unless the plan so states.

The information we find extremely relevant to whether the Plan Administrater acted arbitrarily or capriciously is the medical opinion of Dr. Weisner, plaintiff's treating physician. Dr. Weisner completed a physical capacity form on July 15, 2003. (Id. at LL-0466-67.) This form stated that plaintiff was able to sit for eight hours per day, stand for four hours per day, and walk for three hours per day. (Id.) Furthermore, when asked in the request whether plaintiff could work for eight hours per day, Dr. Weisner responded that he was "unsure - I don't know why 8 hrs of sedentary activity would be a problem but it might depend on the level of activity and symptoms." (Id.) Finally, Dr. Weisner stated in a telephone call to Dr. John Holbrook, one of Liberty's consulting physicians, that aside from restrictions on driving, climbing ladders, and operating heavy machinery, Moser had a substantially intact physical functioning capacity.

Also important is the medical opinion of Dr. Storm, plaintiff's treating cardiologist. On October 9, 2002, Dr. Storm stated that the insertion of the pacemaker had had a positive effect on plaintiff's blackouts and that plaintiff could

17

return to driving.  (Id. at LL-0421.)

We also find that the medical opinions of Liberty's two consulting physicians, Dr. Holbrook and Dr. Taiwo to be important to our determination. Each of these physicians, after reviewing all of the medical records, determined that plaintiff was capable of performing sedentary work.  Despite the fact that both of these physicians are not treating physicians and were hired by Liberty, their opinions are still relevant.  Furthermore, a plan administrator is not obligated to give more weight to a treating physician than its own consulting physicians.  Black & Decker Disability Plan v. Nord, 538 U.S. 822, 833 (2003).

Finally, we conclude by stating that this case does not even appear to be one of conflicting medical opinions.  Both plaintiff's treating physicians and Liberty's consulting physicians  have found that plaintiff is capable of performing sedentary work.  Thus, we find there is ample evidence to permit a reasonable fact-finder to conclude that plaintiff was not entitled to long-term disability benefits under the terms of the Plan.

## CONCLUSION:

In summary, we find that Liberty did not act in an arbitrary and capricious manner when it denied Moser's long-term disability benefits.  We find this to be

true even when placing heightened scrutiny on Liberty's decision.  The record

includes the opinion of Moser's treating physician, Dr. Weisner, who indicated that

Moser was capable of performing sedentary work.  Furthermore, other medical

opinions also state that Moser was capable of performing sedentary work.  Thus,

under the terms of the Plan it was neither arbitrary nor capricious for Liberty to

terminate Moser's benefits after the definition of disability changed to "any

occupation."


      s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DENNIS MOSER,                          :
                                       :          Case No. 4:06-CV-00097
                 Plaintiff,            :
                                       :          (Judge McClure)
            v.                         :
                                       :
LIBERTY LIFE ASSURANCE                 :
COMPANY OF BOSTON,                     :
                                       :
                 Defendant.            :

**O R D E R**

January 9, 2007

For the reasons set forth in the accompanying memorandum:

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      Defendant's motion for summary judgment is granted.  (Rec. Doc.

        No. 12.)

2.      Plaintiff's motion for summary judgment is denied.  (Rec. Doc. No.

        15.)

3.      Final judgment is entered in favor of defendant Liberty Life

        Assurance Company of Boston and against plaintiff Moser.

1

4.      The Clerk is directed to close the case file.


   s/ James F. McClure, Jr.     
James F. McClure, Jr.
United States District Judge


2